1  J. CHRISTOPHER JORGENSEN, ESQ.
   STATE BAR NO. 5382
2  DIANA S. ERB, ESQ.
   STATE BAR NO. 10580
3  LEWIS AND ROCA LLP
   3993 Howard Hughes Pkwy., Ste. 600
4  Las Vegas, NV  89169
   (702) 385-3373
5  (702) 949-8398/fax

6  Attorneys for Defendants Countrywide
   Home Loans, Inc. Recontrust Company, N.A.
7  and Bank of America, N.A.

8
                    UNITED STATES DISTRICT COURT
9
                    FOR THE DISTRICT OF NEVADA
10
11  LARRY DEAN RIGGS,                        Case:  2:09-cv-01821-JCM-PAL
                              Plaintiff,
12       vs.

13  RECONTRUST COMPANY; STACY A.
    O'NEAL; RACHEL K. WAGEMA; ANGELO      **DEFENDANTS' MOTION TO DISMISS**
14  R. MOZILO; COUNTRYWIDE HOME
    LOANS, INC.; KEN LEWIS; and BANK OF
15  AMERICA,

16                            Defendants.

17

18       Defendants Countrywide Home Loans, Inc., Recontrust Company, N.A., and Bank of

19  America, N.A. ("BoA"), all improperly named, submit the following Motion to Dismiss through

    their attorneys, Lewis and Roca LLP.[1]
20
         This Motion is based on the pleadings and papers on file herein, the Request for Judicial
21
    Notice being filed contemporaneously with this Motion, and the following memorandum of points
22
    and authorities.
23

24

25  _____
    [1] The moving Defendants have not been properly served, but are making this appearance to quash this
26  lengthy complaint before adverse action is taken against them without notice.  Based on the
    incomprehensible complaint, it is entirely unclear who Plaintiff is trying to sue. The moving Defendants are
27  assuming that Plaintiff is attempting to sue the entities involved in his home mortgage, the default on that
    mortgage and the pending foreclosure. Plaintiff also appears to sue various individuals employed by the
28  lending and foreclosing entities. None of the individual persons named in the lawsuit have been served with
    the complaint and are currently under no obligation to respond to the lawsuit. Additionally, none of the
    individuals named had any direct involvement with the subject loan. They should be dismissed.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff has failed to pay his mortgage.  The direct result of this failure was the start of foreclosure proceedings.

Plaintiff Larry Dean Riggs ("Plaintiff" or "Riggs") now seeks to avoid his financial obligations to Defendants. After borrowing money to refinance a property, and securing the loan with a deed of trust, Plaintiff Riggs stopped making payments on his loan in March of 2008.  After enjoying the benefits of the loan for over three years, Plaintiff has now filed a lawsuit contesting the loan. Plaintiff's complaint is one of many lawsuits filed over the past months designed to stall a non-judicial foreclosure sale.

Unfortunately, Plaintiff's complaint is absolutely incomprehensible and bears no resemblance to any type of normal Complaint.  It is unclear where Plaintiff obtained such a complaint, as it has no form, function or rationale.  It seems like he must have obtained the complaint as some sort of form, as there are many sections that appear to be of the "cut and paste" variety with no rhyme or reason.  There are no specific causes of action outlined in the Complaint, and no specific claims or prayer for relief.  However, reading between the lines, it appears that plaintiff is upset that foreclosure proceedings have begun on his house and he wants to challenge the ability of Defendants to foreclose.  Interestingly, Plaintiff makes no excuses or explanation for his failure to pay his required mortgage payments for over a year.

Accordingly, the following Motion to Dismiss makes the assumption that Plaintiff is attempting to make the same claims as the many other pro se complaints.  Defendants ask this court to dismiss the complaint as none of the allegations have merit.  Defendants also request this case be dismissed under FRCP Rule 8 as the document, as a whole fails to present "a short plain statement of the claim showing that the pleader is entitled to relief".

The Complaint fails to state a claim upon which relief can be granted and is based on duties that do not exist under Nevada law and inapplicable statutes.  Plaintiff's complaint should be dismissed.  If Plaintiff would have made his promised mortgage payments, no foreclosure would have been needed or initiated

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

502380.1

## II. STATEMENT OF FACTS

***Plaintiff Borrowed Over $362,000.00 from Countrywide to Refinance the Property***

In February of 2006, Larry Dean Riggs refinanced his existing loan on the real property located at 4875 Alphonse Drive, Las Vegas, NV 89122, Parcel No. 161-22-811-003. (*See*, Deed of Trust, Promissory Note, Grant Bargain Sale Deed, and Property Records attached as Exhibits A, B, E and F to the contemporaneously filed Request for Judicial Notice.)  In connection with the refinancing, Riggs executed a promissory note for $362,900 (*see* promissory note attached as Exhibit B to Request for Judicial Notice). Riggs secured the loan with a deed of trust in favor of Countrywide Home Loans Inc. (*See* Deed of Trust attached as Exhibit A to Request for Judicial Notice.)  The deed of trust allows the beneficiaries of the deed of trust to implement foreclosure proceedings should Plaintiff default under the terms of the loan.  (*Id.* )

***Riggs Stopped Making Payments in March of 2008, And Defendants Began Foreclosure Proceedings on the Deed of Trust***

Riggs does not dispute that he stopped making his mortgage payments on the loan.

As a result of his failure to pay, a Notice of Default and Election to Sell was recorded on 8/11/08. (*See* Property Records, Instrument No. 200808110001818, attached as Exhibit E to Request for Judicial Notice.)  Recontrust was substituted as trustee on 9/8/08. (*Id.*, Instrument No. 200809080002819.) After waiting many months, without any attempt by Riggs to cure his Default, a Notice of Trustee Sale was recorded on 8/13/09. (*Id.*, Instrument No. 200908130000379.)

Although Riggs has not tendered the amounts necessary to cure his deficiency, no foreclosure sale has actually occurred to date. (*Id.*)  As explained below, Plaintiff's entire complaint must be viewed as merely an attempt to avoid the consequences of his poor financial choices.  He is simply trying to divert and shift the responsibility of his own failure to pay his debt.

***Plaintiff Filed an Improper Complaint Over THREE Years After Executing the Loan Documents***

After enjoying the proceeds of the loans for over three years--and only after the property was noticed to go to auction--Plaintiff filed a complaint on August 26, 2009.  Plaintiff's Complaint

is so unorganized and incomprehensible that Defendants do no know what Plaintiff is alleging and it is therefore difficult to respond.  It is even unclear as to who Plaintiff is actually trying to sue. Plaintiff's complaint contains unclear references to (1) the Truth in Lending Act (TILA); (2)  UCC violations; (3) the Real Estate Settlement Procedures Act (RESPA); (4) Negligence;  (5) Fiduciary Duties; (6) Wrongful Foreclosure;  (8) RICO allegations, and (9) Deceptive Trade  Practices. However, none of these causes of action are pled sufficiently or accurately enough to withstand dismissal.  In reading the complaint, it appears that Plaintiff may be trying to challenge the legitimacy of the loan itself.  He makes allegations that are similar to what is commonly known as a "Freeman" or "Vapor Money" Complaint. Plaintiff's complaint must be dismissed as it relies on a faulty premise and a long attempted scam that preys upon distressed homeowners who want to believe there is a simple solution to their financial crisis.

The "Mortgage Elimination" scam, also referred to as the "Vapor Money" theory, or "Freeman" process, has existed for years.[2] As a result of the current economy, this scam has resurfaced and now serves as the basis for several lawsuits currently pending in Nevada courts. Unfortunately, people such as Plaintiff, who face difficulty in paying their mortgages, learn of these false theories and latch onto them in hopes of saving their home.[3]

The thrust of the "vapor money" theory is that when the borrower purchased his home, no actual cash changed hands, and therefore no actual loan was ever made by the bank. The borrower then asserts that whatever it was that the lending bank advanced to the borrower, it was not actual money.  Therefore, the loan was illegal. Further, any attempt by the lending bank to require payment of the loan in money is illegal.

Plaintiff is not the first to make this untenable legal claim commonly referred to as the "vapor money" theory. Many borrowers have tried to avoid their loan obligations by advancing similar theories, arguing: "the lender gave me a check instead of cash so my loan is invalid"; "the lender used a wire transfer instead of giving me cash so my loan is invalid"; "the lender did not

---

[2] *See Frances Kenny Family Trust v. World Savings Bank FSB*, 2005 WL 106792 (N.D.Cal. Case No. C-04-03724-WHA, 2005).

[3] As Judge Easterbrook observed, "[s]ome people believe with great fervor preposterous things that just happen to coincide with their self interest"  *Coleman v. Commissioner*, 791 F.2d 68, 69 (7th Cir. 1986).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

502380.1

give me the money in gold coins so my loan is invalid"; etc. Courts in Nevada and across the nation have, and continue to, routinely reject such theories.[4]

For example, this court rejected as untenable such a claim in the case *McMenimen v. Countrywide Home Loans, et. al.*, Case 2:07-cv-01624-KJD-GWF (December 2007). In that case plaintiff had a motion for a temporary restraining order to stop foreclosure denied and his action against Countrywide dismissed by the Honorable Judge Kent J. Dawson. *See* Order Denying Motion for Temporary Restraining Order attached to the Request for Judicial Notice (noting that plaintiff relied on "specious arguments as similar to those frivolous arguments raised and rejected countless times by the courts").

Plaintiff seems to claim in the Complaint that the defendant bank did not loan him "legal tender". Plaintiff claims fraud, but rather than identify the details of the fraud, Plaintiff proceeds to allege that the promissory note, not depositor money, funded the deed of trust. See Complaint, paragraphs 18-29.

There are a wide variety of other theories scattered throughout the complaint, none of which meet the clear pleading requirements of Rules 8, 9 or 12 of the Federal Rules of Civil Procedure. Plaintiff's claims should be dismissed for uncertainty. To the extent that actual claims can be cobbled together from the Plaintiff's ramblings, these also fail for the reasons set forth below.

### III. LEGAL ARGUMENT

A.    **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) authorizes this Court to dismiss the complaint for failure to state a claim upon which relief can be granted.

---

[4] *See, e.g., Nixon v. Individual Head of St. Joseph Mortg. Co.*, 615 F. Supp. 898 (C.D. Ind. 1985); *Theil v. First Federal Sav. & Loan Ass'n of Marion*, 646 F. Supp. 592 (N.D. Ind. 1986); *In re Stickland*, 179 B.R. 979 (Bankr. N.D. Ga. 1995); *Rene v. Citibank NA*, 32 F. Supp. 2d 539 (E.D. N.Y. 1999); *Hinz v. Washington Mut. Home Loans*, 2004 WL 729239 (D. Minn. 2004).

To survive a motion to dismiss, a complaint must be pled showing Plaintiff's entitlement to relief. This "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."[5] Factual allegations must be enough to raise a claim above the speculative level.[6] When faced with a motion to dismiss, the court must accept the well-pleaded factual allegations of the complaint as true, and reasonable inferences must be drawn in the Plaintiff's favor.[7]

However, only "fair" inferences arising from the pleading must be accepted by the court.[8] Bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss.[9] The court is not required to accept as true allegations that are merely conclusory, "unwarranted deductions of fact, or unreasonable inferences."[10] Courts will not assume the truth of legal conclusions merely because they are cast in the form of factual allegations,[11] and will not assume that Plaintiff "can prove facts which [he has] not alleged, or that the defendants have violated . . . . laws in ways that have not been alleged."[12]

A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.[13] When the defense of the statute of limitations appears on the face of the Complaint, a motion to dismiss for failure to state a claim is proper.[14]

Plaintiff is required to give Defendants notice of the nature and basis of his claims. The complaint falls far short of even Nevada's liberal notice pleading standard because it fails to give Defendants fair notice of the nature and basis of Plaintiff's claims and fails to make allegations

---

[5] *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1664-66 (2007) (internal quotations omitted).
[6] *Id.* (citing 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE §1216, at 235-36 (3d ed. 2004)).
[7] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).
[8] *Simpson v. Mars, Inc.*, 929 P.2d 966, 967 (Nev. 1997).
[9] *See G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1246, 1261 (D. Nev. 2006); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).
[10] *Sprewell*, 266 F.3d at 988.
[11] *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *accord Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).
[12] *Associated Gen.l Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897 (1983).
[13] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).
[14] *Kellar v. Snowden*, 87 Nev. 488, 489 P.2d 90 (1971).

1    sufficient to establish the elements of the causes of action they assert. Plaintiff's complaint should

2    therefore be dismissed pursuant to FRCP 12(b)(6) and FRCP 8.

3

4    **B.    The Theory Underlying the Complaint--That Absent a Loan of Cash, There is
         No Debt--Is Entirely Without Merit and Warrants Dismissal of the Action**

5    Plaintiff includes numerous vague and incomprehensible allegations in his complaint.[15]  To

6    the extent that the allegations give rise to any causes of action, those causes of action rely on one

7    fundamental legal theory: Plaintiff claims that his February 2006 loan is invalid under his belief

8    that the Defendants did not loan Plaintiff legal tender or other depositors' money.  See complaint

9    paragraphs 15-30.   Plaintiff claims that the bank refused to tell him if the loan agreement was for

10   Plaintiff to fund the alleged bank loan check or if the defendant bank was to use the bank's legal

11   tender or other 'depositors' money to fund the bank loan check..  This theory is nonsense. And it is

12   not new.

13

14   Variations of this theory have consistently been rejected by courts across the nation. The

15   seminal case is *Nixon v. Individual Head of St. Joseph Mortgage Co.*, 615 F.Supp. 898 (C.

16   D.Ind.1985). There, the plaintiff tried to use the same basic argument advanced here to avoid

17

18   having to repay his loan:

19           Reduced to its bare essentials, Nixon's claim against the
             Mortgage Company is **that it failed to have lawful money**
20           **(in gold and silver coin) in its vault equal to the amount of**
             **the loan, so that it did not loan dollars to Nixon (as**
21           **promised) but mere "credit or checkbook money."**  The
             premise behind the amended complaint is that a check
22           written on the Mortgage Company's credit is not lawful
             tender, as only government-issued currency is legal
23           tender.

24   *Nixon,* 615 F.Supp. at 899-990.

25

26

27   ───────────────────────

28   [15] Although pleading requirements under the federal system are generally liberal ones for plaintiffs, a
     court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the
     equivalent of a duty to re-write it. *Peterson v. Atlanta Housing Authority*, 998 F.2d 904, 912 (11th Cir.
     1993)

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

502380.1

The court found this argument to be "absurd for several reasons." *Nixon, ,* 615 F.Supp. at 990. First, it noted that a "check issued by a bank or mortgage company need not be 'legal tender' for a loan to be valid." *Id.*

> Here, the mortgage company issued Nixon a check to use in buying his residence, and Nixon in fact got the house (subject, of course, to the mortgage entered into between the parties). What fraud was possibly worked on Nixon? He claims that the mortgage company said it would pay in dollars but did not have dollars available to back up the representation. Yet whether money was in the vault or not, the check issued by the company had the same effect: **it allowed Nixon to buy his house.**

*Id.* Then the court noted that "while the check was not legal tender in the sense of a dollar bill or coins, it nevertheless had many of the same qualities of negotiability." *Id.* The court also observed that "[t]he check apparently satisfied the seller, who has not sued Nixon for some 'fraudulent payment,' and Nixon received his house in exchange for turning the check over to the seller." *Id.*

Finally, the court found that this type of a lawsuit "smacks of bad faith on the part of the plaintiff." *Id.* The borrower-plaintiff did not object to receiving a check from the lender when he originally took out the loan and purchased his home. It was only after he was facing (and trying to avoid) foreclosure that he suddenly sought "to have the loan with which he obtained his residence declared illegal so as to back out of his contractual promise to pay on the loan." (*Nixon,* 615 F.Supp. at 991).

> **He has enjoyed the fruits of what the mortgage company's check bought, yet seeks to nullify that check on the basis of an absurd view that bank or mortgage company checks are worthless attempts to create "illegal tender."** Nixon's own experience in getting a residence with the check indicates that the market place recognizes the value of "credit and checkbook money," so that Nixon has suffered no damages and has no valid claim to advance here.

*Id.* (emphasis added).

Other attempts to advance this argument have fared no better. As the court observed in *Theil v. First Federal Savings*: "Reasoning on the most fundamental level, a level which requires

more common sense than legal acumen, plaintiffs' theory is absurd.  A check issued by a

mortgagee need not be 'legal tender' for the loan to be valid.  Far from suggesting any fraudulent

conduct, the drafts issued by the Savings and Loan in this case accomplished the only conceivable

purpose of the transaction:  they allowed [the borrower] to buy the properties at issue." *Theil v.*

*First Federal Savings & Loan Association*, 646 F.Supp. 592, 596 (N.D.Ind.1986).

Like Plaintiff here, the plaintiff in *Stickland v. A Mortgage* also tried to use this theory to

support claims for fraud and racketeering.  *Stickland v. A Mortgage Co.*, 179 B.R. 979 (Bankr.

N.D. Ga. 1995). The Court was not sympathetic:

> Since both Congress and the courts have found federal
> reserve notes to be legal tender, the court finds the check
> given to plaintiff by defendant Enterprise was backed by
> and redeemable in federal reserve notes, coins and lawful
> money of the United States. . .  The court finds that under
> the allegations this complaint plaintiff cannot prove
> any set of facts in support of her claims which would
> entitle her to relief.  ***The issues raised by the plaintiff in
> her complaint are frivolous, irrational and completely
> contrary to the established contract and monetary laws
> of this country.***  Accordingly, it is ordered that the
> adversary proceeding filed by plaintiff . . . is dismissed
> with prejudice as to each and every defendant.

*Stickland*, 179 B.R. at 981-82 (emphasis added)[16]

No law supports Plaintiff's argument that the money lent to him was not "lawful money"

and therefore does not have to be repaid.  Such an argument is incongruous.  The court should

consider how the world would work if Plaintiff was right. Anytime anyone wished to purchase a

house or refinance an existing loan, they would have to drive down to their new lender's office, go

in the vault, take out a suitcase filled with several hundred thousands worth of bills (or coins), then

---

[16] To this day, individuals continue to advance this theory, and courts continue to reject it. *Rene v. Citibank N.A.*, 32 F. Supp.2d 539, 544-545 (E.D.N.Y. 1999) ("Since all the causes of action stem from the plaintiffs' premise that the check issued by Citibank was an attempt by the bank to create illegal tender, the defendants' motions to dismiss for failure to state a claim are granted, and the plaintiffs' complaint is dismissed in its entirety); *Davis v. JP Morgan Chase Bank*, 2003 U.S. Dist. LEXIS 24880 (N.D. Ill. March 11, 2003)(rejecting plaintiffs' theories that "(1) the mortgages and loans are invalid because they provide for repayment in dollars, which plaintiffs believe violates a 1933 congressional resolution passed when the United States went off the gold standard; (2) defendants actually loaned credit, rather than money, which plaintiffs allege is not permitted by defendants' banking charters; and (3) defendants should have known that plaintiffs could not pay off the requested loans").

drive over to the seller's home (or their old lender's office if it is a refinance), and hand over the cash. The seller would then have to count all the bills (and coins) to make sure the amount is correct, then take the suitcase and drive down to his/her bank's office and drop it off in the vault. If this is how loans have to be made, then the entire real estate market would grind to a virtual standstill.

Moreover, Plaintiff does not—because he cannot—allege that he did not receive the benefit of the loan; indeed, as the public records show, the money Plaintiff received from Countrywide allowed him to purchase the property. The "vapor-money" theory that Plaintiff advocates here is nothing more than an attempt to avoid the loan obligation.

## C.    Fraud

When fraud is alleged, Fed. R. Civ. P. 9(b) provides that all "circumstances constituting the fraud … shall be stated with particularity." Fed. R. Civ. P. 9(b); *see also Berry v. Valence Tech., Inc.*, 175 F.3d 699, 706 (9th Cir.), *cert. denied*, 528 U.S.1019 (1999). Averments of fraud must be specific enough to put a defendant on notice of the particular misconduct the defendant is alleged to have committed so that the defendant can properly defend against the allegations. *Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). A plaintiff is required to plead facts as to **time, place** and **substance of the fraud**, specifically detail the defendant's allegedly **wrongful acts**, including **when** they occurred and **who** engaged in the misconduct. *See e.g., Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997); *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-49 (9th Cir. 1994); *Arndt v. Prudential Bache Securities, Inc.*, 603 F. Supp. 674, 676 (S.D. Cal. 1984).[17]

---

[17] Fed. R. Civ. P. 9(f) further provides that "for purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter." *See Linnabery v. DePauw*, 695 F.Supp. 411, 412 (C.D. Ill. 1988); *Cook v. Kuljian Corp.*, 137 F.Supp. 833 (E.D. Pa. 1956). The purpose of this requirement is to permit the defending party to frame an adequate answer raising applicable defenses based on the statute of limitation and other principles of law. *See Pentz v. Downey*, 110 F.Supp. 642, 644 (E.D. Pa. 1953).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

502380.1

Here, Plaintiff does not allege fraud in any understandable way. He does not allege that he justifiably relied on any alleged misrepresentations. Accordingly, Plaintiff's fraud claims must be dismissed.

**D.      Plaintiff's "holder in due course" Allegations are Irrelevant**

Plaintiff alleges that he does not believe that [Defendants] can show they are the true Holder in Due Course and that Defendants may attempt to commit fraud upon the Court in an attempt to persuade the Court that [Defendants] are the true holder in due course.   These allegations are baseless and irrelevant.

Plaintiff admits that he purchased the property with the assistance of a loan from Countrywide.  The very nature of his Complaint requires that Defendant Countrywide is a party to both the deed of trust and the promissory note. Plaintiff provides no factual allegations that would support his conclusion that Countrywide is not the holder in due course.

Further, as it relates to Plaintiff's assertion that Defendants somehow do not have standing, (although Plaintiff is the one who sued Defendants), the Defendants involved in the foreclosure action are not "Plaintiffs" in an action seeking to collect on the promissory note, and have not applied to the court for judicial foreclosure. Nevada is a non-judicial foreclosure state. Defendants need not prove standing.[18] Accordingly, Plaintiff cannot assert a standing claim and it must be dismissed.

---

[18] In Nevada, the instrument commonly used to secure a promissory note or mortgage given for a real property loan is a deed of trust.  Basically, the encumbered property is conveyed by the mortgagor (sometimes referred to in the deed of trust as the trustor, grantor or borrower) to the trustee, a title company, as security for repayment of the loan from the mortgagee (the beneficiary or lender).  See generally  NRS Chapter 107 (Deeds of Trust).  The default and sale provisions in a Nevada deed of trust are regulated by statute.  See NRS 107.080 (trustee's power of sale; required notices); NRS 107.090 (filing of notice of default and sale); NRS 21.130 (requirements of notice of sale).  The language of the deed of trust itself "establishes the rights and responsibilities of the parties and prescribes certain duties to be performed by the trustees." Edwards *v. John Hancock Mut. Life Ins. Co.*, 973 F.2d 1027, 1030-1031 (1st Cir.1992) (interpreting Nevada law).

The beneficiary of a deed of trust ordinarily has two means to enforce the security interest provided by the deed: (1) judicial foreclosure or (2) a trustee's sale. The Nevada Supreme Court explained:

[D]eeds of trust fall within the meaning of NRS 40.430.  Where a default has occurred, a beneficiary, under a deed of trust, can select the judicial process for foreclosure pursuant to NRS

**E.      No RESPA Violation Exists Where Servicing Has Not Been Transferred**

12 U.S.C. §2605(b), a provision of the Real Estate Settlement Procedures Act ("RESPA") requires notice by a transferor or loan servicing at the time of transfer. Specifically, that every servicer of any federally regulated loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person within 15 days before the effective date of assignment, sale or transfer of the servicing of the mortgage loan. 12 U.S.C. §2605(b)(1)-(3).

Here, Plaintiff references violations of RESPA without actually indicating any facts upon which such a violation could be based. This allegation is without merit because the servicing of the subject loan has never been transferred. Plaintiff obviously did not research any of the claims he is making. The servicer at the time he placed the loan was Countrywide. It is still Countrywide. The servicing of the loan has not changed. The claim is without merit.

**F.      Negligence**

Any potential claim of negligence by Plaintiff is barred by the two-year statute of limitations. In Nevada, an action arising from negligent acts must be brought within two years. NRS 11.190(4)(e).   Each of the "negligent acts" alleged in the complaint stem from the origination of the loan that occurred in February of 2006. Plaintiff did not file his complaint until August 2009, over three years later. As such, Plaintiff's negligence claims are time barred.

Even if Plaintiff's negligence claim were not time barred, it still fails.   In order to state a claim for negligence against Countrywide, BoA or Recontrust, Plaintiff must set forth allegations sufficient to establish the following elements: (1) that Defendants owed Plaintiff a duty of care; (2)

---

40.430, or the procedure under NRS Ch. 107, of foreclosure by a trustee's sale and then bring an action on the promissory note for any deficiency which may occur.
*Nevada Land & Mortgage Co. v. Hidden Wells Ranch*, 435 P.2d 198, 200 (Nev. 1967) (citing *McMillan v. United Mortgage Company*, 412 P.2d 604 (Nev. 1966)).
The legal framework governing those nonjudicial foreclosures or trustee's sales is found in NRS 107.80.   The statutory scheme specifically provides that the foreclosure process may be conducted by "[t]he trustee, or other person authorized to make the sale under the terms of the trust deed or transfer in trust," and that a person authorized to record the notice of default or the notice of sale includes "[t]he beneficiary, the successor in interest of the beneficiary or the trustee."  NRS 107.80.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

502380.1

that Defendants breached this duty of care; (3) that the breach was the legal and proximate cause of Plaintiff's injury; and (4) that Plaintiff suffered damages.[19]

Plaintiff's claim for negligence fails as a matter of law because the duties Plaintiff postulates in his negligence claim do not actually exist in the law. As "a general rule, *a financial institution owes no duty of care to a borrower* when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."[20] The success of a borrower's investment is not a benefit of the loan agreement which the lender is under a duty to protect.[21] "Liability to a borrower for negligence arises only when the lender actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'"[22] Nowhere in the complaint does Plaintiff even suggest—nor can he suggest—that any of the Defendants were actively involved in the financed enterprise. Thus, the duties proposed by Plaintiff are non-existent. Similarly, Plaintiff does not plead any facts that would lead to a reasonable inference that any of the Defendants had any type of special relationship with him.

Plaintiff's negligence claim also fails because of the economic loss doctrine. Nevada has recognized the economic loss doctrine, which precludes recovery in tort for purely economic losses.[23] While the Nevada Supreme Court has not had occasion to apply the economic loss doctrine in the lender-borrower context, the United States District Court for the District of Nevada predicted that the Nevada Supreme Court would indeed apply the doctrine in the lender-borrower context.[24] The economic loss doctrine bars Plaintiff's recovery under a negligence theory because his damages are purely economic; Plaintiff's action arises entirely out of what he readily admits was a financial transaction. Thus, even assuming that Countrywide, BoA or Recontrust owed Plaintiff a negligence duty –which, as described above, they did not – his negligence claim would

---

[19] *Hammerstein v. Jean Dev. West*, 111 Nev. 1471, 1475, 907 P.2d 975, 977 (1995).
[20] *Nymark v. Heart Fed. Say. & Loan Ass'n.*, 231 Cal.App.3d 10$9, 1096, 283 Cal.Rptr. 53, 56 (1991)(emphasis added).
[21] *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516.
[22] *Id.* at 35, 161 Cal.Rptr. 516 (quoting *Conner v. Great Western Sav. & Loan Ass'n.*, 69 Cal.2d 850, 864, 73 Cal.Rptr., 369 (1968).
[23] *See Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259 (2000).
[24] *Yerington Ford*, 359 F.Supp.2d at 1080-81.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

502380.1

1    still fail as a matter of law because of the economic loss doctrine. Dismissal is therefore
2    appropriate.
3        Further, Plaintiff provides no information as to which named or unnamed parties owed a
4    duty of care, which of those parties breached the duty, how the duty was breached, how the breach
5    caused damages, or the extent of damages. Even under a notice pleading standard, the complaint
6    fails to provide Defendants with fair notice of the basis of Plaintiff's negligence claim.

7    **G.    There Is No Special Relationship or Fiduciary Duty Between Defendants and Plaintiff**
8
9        Any "Special Relationship" or "Fiduciary Duty" claim fails as a matter of law because
10   neither Countrywide, BoA nor Recontrust owes Plaintiff any fiduciary duty. Plaintiff's allegations
11   and the documents contained in the Request for judicial Notice show that his relationship with
12   Defendants was an ordinary arms-length transaction, similar to any other borrower-lender
13   relationship.

14       Plaintiff does not set forth any allegations making even a rudimentary showing of agency,
15   nor does his plead any facts that would satisfy the elements of a special relationship or fiduciary
16   duty. Plaintiff's claim for relief fails as a matter of law because, making every possible inference
17   in Plaintiff's favor, the complaint alleges nothing more than that Defendants were Plaintiff's
18   lenders. Lenders do not owe their borrowers fiduciary duties. Further, Plaintiff does not identify
19   in what capacity Defendants owe this purported fiduciary duty.

20       While the Nevada Supreme Court has not ruled on the issue of whether a creditor owes a
21   fiduciary duty to a debtor, the United States District Court for the District of Nevada considered
22   the issue in *Yerington Ford, Inc. v. General Motors Acceptance Corp.*, predicting that the Nevada
23   Supreme Court would hold that a lender does not owe a fiduciary duty.[25] The result in *Yerington*
24   *Ford* is consistent with the holdings of many courts in sister jurisdictions.[26] Absent exceptional

---

25   [25] *See Yerington Ford, Inc. v. General Motors Acceptance Corp.*, 359 F.Supp.2d 1075, 1090 (D.Nev. 2004) ("the Court is satisfied that the Nevada Supreme Court would hold that an arms-length lender-borrower relationship *is not fiduciary in nature*, absent exceptional circumstances") (emphasis added).
26   [26] *See, e.g., Oaks Management Corp. v. The Superior Court of San Diego County*, 145 Cal.App.4th 453, 466, 51 Cal.Rptr. 561, 570 (2006) ("it is established that absent special circumstances not present here a loan transaction is at arms-length and *there is no fiduciary relationship between the borrower and lender*")(emphasis added); *See also AM Cosmetics, Inc. v. Solomon*, 67 F.Supp.2d 312, 320 (S.D.N.Y. 1999) (interpreting New York law); *Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F.Supp. 1437, 1443 (S.D.Fla. 1995) (applying Florida law); *GE Capital Mortg. Services, Inc. v. Pinnacle Mortg.*, 897 F.Supp. 854, 863 (applying Pennsylvania law); *Stewart v. Machias Sav. Bank*, 762 A.2d 44, 46 (Me. 2000).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

502380.1

1    circumstances, the existence of which is not even pled in the Complaint, Countrywide did not owe

2    Plaintiff any fiduciary duty.  This court has routinely dismissed this same cause of action dozens

3    of times over the past several months. (See Exhibit "G" to the Request for Judicial Notice).   This

4    complaint is no different.  Accordingly, Plaintiff's claim for breach of special

5    relationship/fiduciary duty should be dismissed.

6    **H.    Wrongful Foreclosure/Injunctive Relief**

7          To succeed in a claim for wrongful foreclosure, the plaintiff must show that (1) defendant

8    exercised a power of sale or foreclosed on plaintiff's property; and, (2) at the time the power of

9    sale was exercised, there was no breach of condition or failure of performance by plaintiff that

10   would have authorized the foreclosure or exercise of power of sale.  *Collins v. Union Federal*

11   *Savings and Loan Association*, 99 Nev. 284, 662 P.2d 610 (1983).  Plaintiff's complaint fails by

12   this exact definition--the power of sale has not been exercised in this case.  In addition, Plaintiff

13   cannot show that he has not breached or failed to perform his part of the mortgage contract.

14   *1.  Plaintiff's wrongful foreclosure claim ignores the plain language of the deed of trust*

15         Plaintiff's wrongful foreclosure allegations ignore the plain language of the deed of trust.

16   The roles of the lender (Countrywide), MERS, and substituted trustee Recontrust are all defined in

17   the deeds of trust, as is their right to foreclose on the property when Plaintiff stops making his

18   mortgage payments. (*See* Deed of Trust, attached as Exhibit A to Request for Judicial Notice.)

19   Plaintiff himself gave Defendants the right to foreclose on his property when he executed the

20   promissory notes and deeds of trust.  Defendants should not be forced to give up their interest in

21   the property where Plaintiff has not lived up to his part of the contract.

22   *2.  Plaintiff lacks standing to seek injunctive relief where he has not tendered*

23         Plaintiff lacks standing to seek injunctive relief because he has not made, or even alleged

24   the ability to make, a full tender of the amount due on his loan.  To challenge the validity of a

25   foreclosure action, a plaintiff must tender the undisputed amount due and owing on the secured

26   indebtedness.  *Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1109 (1996) (holding that

27   appellants were required to allege tender of the amount of the secured indebtedness in order to

28

1    maintain any cause of action for irregularity in the sale procedure).[27] The tender requirement

2    applies to any cause of action for irregularity in the sale procedure. *Id.* Courts have explained:

3              The rule . . . is based upon the equitable maxim that **a Court of
              Equity will not order a useless act performed** . . . if Plaintiff
4              could not have redeemed the property had the sale procedures been
              proper, any irregularities in the sale did not result in damages to
5              Plaintiff.

6    *FPBI Rehab 101 v. ENG Investments, Ltd.*, 207 Cal.App.3d 1018, 1021 (Cal. Ct. App. 1989)

7    (emphasis added).[28]

8            The "Tender Rule" states that the tenderer (Plaintiff) must comply with whatever is

9    necessary on his part to complete the agreed upon transaction, which in this case is Plaintiff's

10   loan, which is memorialized by the promissory note. The act of tender must be such that it needs

11   only acceptance by the one to whom it is made to complete the transaction.[29] In other words, in

12   order to have standing to complain of wrongful foreclosure, Plaintiff has to first fulfill his

13   obligations under the promissory note, including repayment.

14          A valid tender includes the full amount currently due and owing with additional tender

15   each month as payments become due. *McCool v. Decatur County Bank of Greensburg*, 480 N.E.

16   2d 596 (Ind. Ct. App. 1985) (holding that to prove defense of tender, mortgagors had to show they

17   made a valid tender of full amount due and that tender was kept good by paying it into court for

18   use and benefit of mortgagee; mortgagors were required to make additional tender each month as

19   monies became due). Plaintiff is required to do equity before the trustee's sale may be cancelled.

20   Plaintiff is not entitled to relief where he has not tendered the amount due under the promissory

21

22   [27] *See also United States Cold Storage v. Great Western Savings & Loan Ass'n*, 165 Cal. App. 3d 1214, 1222 (Cal. Ct. App. 1985); *Karlsen v. American Savings & Loan Ass'n*, 15 Cal. App. 3d 112, 117 (1971).
23   [28] *See also Shapiro v. Goldberg*, 192 U.S. 232 (1903) (stating that she who seeks equity must do equity, and cannot set aside the proceedings for collection of a debt without tendering the amount due) (citing
24   *McQuiddy v. Ware*, 87 U.S. 14 (1873)); *Servco Pac., Inc. v. Dods*, 193 F. Supp. 2d 1183 (D. Haw. 2002) (citing *Gardenhire v. IRS*, 209 F.3d 1145 (9th Cir. 2000)); *U.S. v. Lewis County*, 2001 U.S. Dist. LEXIS 9579 (W.D. Wash., June 12, 2001); *Mahaffey v. Investor's Nat'l Sec. Co.*, 747 P.2d 890 (Nev. 1987);
25   *Lyerla v. Watts*, 482 P.2d 318 (Nev. 1971); *Stanley v. Limberys*, 323 P.2d 925 (Nev. 1958); *Dellamonica v. Lyon County Bank Mortgage Corp.*, 78 P.2d 89 (Nev. 1938); *Mosso v. Lee*, 295 P. 776 (Nev. 1931);
26   *Robinson v. Kind*, 59 P. 863 (Nev. 1900).
27   [29] *Nguyen v. Calhoun*, 105 Cal.App.4th 428 (Cal. Ct. App. 2003) (holding that it is the debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that
28   the tender is of no effect); *Crane v. Mabry*, 802 P.2d 696 (Or. Ct. App. 1990) (holding that tender of the amounts past due, as required to preclude foreclosure on a deed of trust, must be an unconditional offer to pay the amount owed, and the money must be presently available for acceptance).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

note and deed of trust, even if non-payment is due to hardship. *See Shimpones v. Stickney*, 28 P.2d 673 (Cal. 1934) (holding that it was clearly erroneous to quiet title to Plaintiff's property where Plaintiff refused to do equity).[30]

Since Plaintiff has not tendered payment as required in this case, he lacks standing to maintain his claim for wrongful foreclosure or injunctive relief.

## I.    Plaintiff Fails To Plead His RICO Claim With The Particularity Required By Fed.R.Civ.P. 12(b)(6)

Plaintiff's Racketeer Influenced And Corrupt Organizations ("RICO") allegations should be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) because Plaintiff's allegations are too vague. The pleading elements of a RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiff's business or property."[31][1]  Additionally, causation lies at the heart of a civil RICO claim. Plaintiff must show that the Defendants' alleged misconduct proximately caused his alleged injury before the claim can succeed.[32][2]

A "pattern of racketeering activities" requires "at least two acts of racketeering activity," which acts are the felonies enumerated as "racketeering activity" in 18 U.S.C § 1996(1).[33][3] Further, to satisfy the definition of a "pattern of racketeering activity," a mere showing of two criminal predicate acts *will not suffice*. Rather, Plaintiff must show both "relationship" and "continuity." The predicate crimes for a racketeering charge must be related, and they must either constitute or threaten long-term criminal activity.[34][4]  Alternatively, a plaintiff can assert that the defendant is involved in the "collection of an unlawful debt," which the statue defines as collecting illegal gambling debts.[35][5]

---

[30] *See also, Summa Investing Corp. v. Resolution Trust Corp.*, 586 So. 2d 1278 (Fl. Dist. Ct. App. 1991) (failure to make a valid tender justifies foreclosure); *Hill v Filsoof*, 2005 WL 1176958 (Ga. Ct. App. 2005) (holding that neither fraud nor poverty constitutes an equitable excuse for failure to tender a debt on a note secured by deed in order to prevent foreclosure; *Berry v. Government National Mortgage Ass'n*, 202 S.E. 2d 450 (Ga. 1973) (holding that alleged poverty is not grounds for obtaining cancellation of a foreclosure where the mortgagor did not tender the amount due under the security deed and note); *Kraemer v. Kraemer*, 382 P.2d 394 (Nev. 1963) (recovery of property is denied where plaintiff was financially unable to redeem property despite evidence of fraud and procedural irregularities in foreclosure).

[31][1] *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (citing 18 USC section 1964(c)).
[32][2] *Polus v. Caesars World, Inc.* 379 F.3d 654, 664-665 (9th Cir. 2004).
[33][3] *See, Kahre v. Damm*, 2007 US Dist. LEXIS 95978, 25-26 (D. Nev. 2007).
[34][4] *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 US 229, 106 L.Ed. 2nd 195, 109 S.Ct. 2893 (1989).
[35][5] *See*, 18 U.S.C. §§ 1961(1), (5)-(6) and 1962(a).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

502380.1

1        Importantly, RICO claims must be pled with particularity. Courts have held that a civil

2    RICO complaint must, in that portion of the pleading which describes the criminal acts that the

3    defendant is charged to have committed, *contain a sufficiently plain, concise and definite*

4    *statement of the essential facts* such that it would provide a person of ordinary understanding with

5    notice of the charges.[36][6]  In fact, the Ninth Circuit requires a plaintiff asserting a RICO claim to

6    plead the facts constituting the predicate offenses with the particularity required by Fed.R.Civ.P.

7    9(b) for fraud claims.[37][7]  Fed.R.Civ.P. 9(b) requires that the plaintiff state the time, place and

8    specific manner of commission of the RICO predicative acts and the role of each defendant in

9    each predicate act.[38][8]

10        In this case, Plaintiff fails to meet even the low pleading standard of Fed.R.Civ.P. 8(a), let

11    alone the higher pleading standard required for a civil RICO claim. For instance, Plaintiff fails to

12    allege that the Defendants engaged in a specific pattern of racketeering activities. Nor does he

13    point to, or provide any detail regarding any of the predicate felonies listed in 18 U.S.C. §1962(a)

14    that Defendants supposedly violated, if any. Additionally, Plaintiff's allegations all relate to *only*

15    *one transaction*, his mortgage loans. RICO requires *at least two acts* from those listed in 18

16    U.S.C. § 1962(a). Accordingly, Plaintiff's RICO Claim should be dismissed for failure to state a

17    claim on which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6).

18    **J.    Deceptive Trade Practices**

19        Like his other claims, Plaintiff's cause of action for deceptive trade practices fails. The

20    relevant statute, NRS §598.0923(3), applies only to regulation of transactions relating to the "sale

21    or lease of goods or services." A loan secured by real property does not fit into either of these

22    categories, and the statute therefore would not apply.

23    **IV. CONCLUSION**

24        Based on the foregoing, Defendants Countrywide Home Loans, Inc., Recontrust Company

25    N.A. and Bank of America, N.A., request dismissal of Plaintiff's complaint pursuant to FRCP 8

26

27    [36][6]  *See, Siragusa v. Brown,* 114 Nev. 1384, 1396 Nev. 1998).
[37][7]  *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 541 (9th Cir. 1989).

28    [38][8]  *Occupational-Urgent Care Health Systems, Inc. v. Sutro & Co., Inc.,* 711  F.Supp. 1016, 1020 (E.D. Cal. 1989).

and 12(b)(6). Defendants also ask that the individuals who have been named as Defendants in this lawsuit, but who have not been personally served, also be dismissed. These individuals had no involvement in the loan transaction and no contact with Plaintiff.

DATED this 22 day of September, 2009.

LEWIS AND ROCA LLP

By _____
J. CHRISTOPHER JORGENSEN, ESQ.
STATE BAR NO. 5382
DIANA S. ERB, ESQ.
STATE BAR NO. 10580
3993 Howard Hughes Pkwy., Ste. 600
Las Vegas, NV 89169
Attorneys for Defendants Countrywide Home
Loans, Inc., Recontrust Company, N.A. and
Bank of America, N.A.

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing document was made on the 23 day of September 2009, by depositing a copy for mailing, first class mail, postage prepaid, at Las Vegas, Nevada, to the following:

Larry Dean Riggs
4875 Alphonse Drive
Las Vegas, NV 89122
Pro Se Plaintiff

_____
an employee of Lewis and Roca LLP

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

502380.1